IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AI VISUALIZE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC.<br>and MACH7 TECHNOLOGIES, INC.<br><br>Defendants. | Civil Action No. 21-1458-RGA |

MEMORANDUM OPINION

Andrew L. Cole, COLE SCHOTZ P.C., Wilmington, DE; Sean N. Hsu, Rajkumar Vinnakota, Gary Sorden, Vishal Patel, COLE SCHOTZ P.C., Dallas, TX.

    Attorneys for Plaintiff.


David E. Moore, Bindu A. Palapura, Carson R. Bartlett, POTTER ANDERSON & CORRON LLP, Wilmington, DE; David J. Lender, Anish R. Desai, WEIL GOTSHAL & MANGES LLP, New York, NY; Amanda Branch, WEIL GOTSHAL & MANGES, LLP, Redwood Shores, CA; David Greenbaum, NUANCE COMMUNICATIONS, INC., Mahwah, NJ.

    Attorneys for Defendants.


July 8th, 2022

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before me is Defendants' motion to dismiss pursuant to 35 U.S.C. § 101 and Federal Rule of Civil Procedure 12(b)(6). (D.I. 24). Defendants argue all Plaintiff's infringement claims should be dismissed because the Asserted Claims are directed to patent ineligible subject matter. (D.I. 25 at 1-2). Defendants also move to dismiss Plaintiff's claim of willful infringement for failure to state a claim. (*Id.* at 21-22). I have considered the parties' briefing. (D.I. 25, 27, 31).

## I. BACKGROUND

Medical imaging techniques such as computed axial tomography ("CT") and magnetic resonance imaging ("MRI") involve taking a series of two-dimensional scans of parallel, planar cross-sections of an area of a patient's body, resulting in a three-dimensional virtual model of the area that was scanned contained in a "volume visualization dataset"[1] ("VVD"). (D.I. 22 ¶¶ 25-26). This VVD can be used to generate virtual views[2] of any portion of the area that was scanned by selecting a plane to be cut through the volume of the area at a particular location and angle relative to the planar cross-sections. (*Id.* ¶ 27).

Plaintiff is AI Visualization ("AIV"). Its inventions allow a user to access 3D or higher dimensional[3] virtual views of a VVD at her own computer over the Internet, without having to transmit and/or locally store the entire VVD. AIV is the owner of several patents related to these

---

[1] The term, "volume visualization dataset" is not unique to the field of medical scans. (D.I. 25-2 Ex. 1 at 2:41-42 (explaining the claimed inventions are "for visualizing large medical scans and other volume visualization datasets on any Internet connection")).

[2] "The 3D virtual image is a two-dimensional representation of the 3D object showing the desired perspective of view and may include images showing depth of or through the object in a direction normal to and behind the selected plane of view." (D.I. 25-2 Ex. 1 at 1:42-46).

[3] 4D and 5D views can also be generated. "Scans in 4D can come in the form of time varying 3D scans, or as a result of combining two datasets, such as PET and CT" datasets. (D.I. 25-2 Ex. 1 at 2:12-14). "[W]hen PET-CT are combined and have a time component, this can be termed a 5D scan, which involves very large datasets." (*Id.* at 2:15-16)

inventions, including U.S. Patent No. 8,701,167 ("the '167 Patent"), U.S. Patent No. 9,106,609 ("the '609 Patent"), U.S. Patent No. 9,438,667 ("the '667 Patent"), and U.S. Patent No. 10,930,397 ("the '397 Patent) (collectively, "the Asserted Patents"). (*Id.* ¶ 87). The Asserted Patents share an identical specification. (D.I. 25 at 3). AIV alleges Defendants' products infringe claims 1, 6, 7, 9, 12, and 13 of the '167 Patent; claims 1, 4, 6-9, 19, 20, 22, 25, and 26 of the '609 Patent; claims 1-3, 8, 9, 11, 14, and 15 of the '667 Patent; and claims 1-3, 11-14, and 16-18 of the '397 Patent (collectively, "the Asserted Claims"). (D.I. 22 ¶¶ 90, 99, 111, 121).

The parties agree that the 35 Asserted Claims can be grouped into three groups. (D.I. 25 at 5; D.I. 27 at 5). Group 1 includes claims directed to a system for remotely viewing user-requested virtual views of a VVD stored at a centralized database using standard computer equipment (*i.e.*, at least one transmitter, at least one central data storage medium containing the VVD, servers, a resource manager device for load balancing the servers, a security device for controlling communication between the client's device and the servers, and a physically secured site for housing the aforementioned components) and a web application that executes the user's request by (1) determining which frames of the requested view are stored locally and which are stored at the centralized database, (2) transmitting the non-locally stored frames to the user's device, and (3) displaying those frames in combination with any locally stored frames to create the requested views. (D.I. 25 at 5; D.I. 25-2 Ex. 1 at 17). Group 1 contains claims 4 and 6-9 of the '609 Patent; claim 1 of the '167 Patent; claims 1-3 of the '667 Patent; and claims 1-3, 11-14, and 16-18 of the '397 Patent. (D.I. 25 at 5).

Group 2 includes claims directed to the same system as the Group 1 claims, where the web application determines whether any of the frames of the requested views are locally stored by assigning each request a "unique identifiable key" and comparing that key with a prior request's

3

key to determine whether any values are equivalent. (D.I. 25 at 6; D.I. 25-2 Ex. 1 at 18). Group 2 contains claims 19-20 of the '609 Patent; claims 6-7 of the '167 Patent; and claims 8-9 of the '667 Patent. (*Id.*).

Group 3 is directed to the same system disclosed in the Group 1 claims, except the web application does not check to see whether frames from the requested views are stored locally. (D.I. 25 at 6-7; D.I. 25-2 Ex. 1 at 19). Instead, the web application requests all frames of the requested views from a centralized server, which first transmits a lower image quality version of the frames for the user to view immediately, and then transmits the higher image quality version. (*Id.*). Group 3 contains claims 22, 25, and 26 of the '609 Patent; claims 9, 12, and 13 of the '167 Patent; and claims 11, 14, and 15 of the '667 Patent. (*Id.*).

The parties agree Claim 1 of the '609 Patent is representative of Group 1, Claim 19 of the '609 Patent is representative of Group 2, and Claim 22 of the '609 Patent is representative of Group 3. (D.I. 25 at 5; D.I. 27 at 5); *see Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1341, 1348 (Fed. Cir. 2019) (finding the district court did not err in limiting its Section 101 analysis to a single representative claim where all claims were "substantially similar and linked to the same abstract idea"). Therefore, I will limit my analysis to Claims 1, 19, and 22 of the '609 Patent.

Claim 1 of the '609 Patent discloses:

> A system for viewing at a client device at a remote location a series of three-dimensional virtual views over the Internet of a volume visualization dataset contained on at least one centralized database comprising:
>   at least one transmitter for accepting volume visualization dataset from remote location and transmitting it securely to the centralized database;
>   at least one central data storage medium containing the volume visualization dataset;

> a plurality of servers in communication with the at least one centralized database and capable of processing the volume visualization dataset to create virtual views based on client request;
> a resource manager device for load balancing the plurality of servers;
> a security device controlling the plurality of communications between a client device, and the server; including resource manager and central storage medium;
> at least one physically secured site for housing the centralized database, plurality of servers, at least a resource manager, and at least a security device;
> a web application adapted to satisfy a user's request for the three-dimensional virtual views by:
>> a) accepting at a remote location at least one user request for a series of virtual views of the volume visualization dataset, the series of views comprising a plurality of separate view frames, the remote location having a local data storage medium for storing frames of views of the volume visualization dataset,
>> b) determining if any frame of the requested views of the volume visualization dataset is stored on the local data storage medium,
>> c) transmitting from the remote location to at least one of the servers a request for any frame of the requested views not stored on the local data storage medium,
>> d) at at least one of the servers, creating the requested frames of the requested views from the volume visualization dataset in the central storage medium,
>> e) transmitting the created frames of the requested views from at least one of the servers to the client device,
>> f) receiving the requested views from the at least one server, and displaying to the user at the remote location the requested series of three-dimensional virtual views of the volume visualization dataset by sequentially displaying frames transmitted from at least one of the servers along with any frames of the requested series of views stored on the local data storage medium.

(D.I. 25-2 Ex. 1 at 17).

Claim 19 of the '609 Patent discloses:

> The system of claim 1 wherein the web application determines storage of any frame of the requested views of the volume visualization dataset on the local data storage medium is by:
>> creating a unique identifiable key of a request by the remote location of a three-dimensional virtual view of the volume visualization dataset;
>> storing on the local data storage medium the unique identifiable key of a prior request by the remote location of a three-dimensional virtual view;

>   comparing the unique identifiable key of a current request by the remote location of a three-dimensional virtual view with a stored unique identifiable key of a prior request by the remote location of a three-dimensional virtual view;
>   determining if values of the current and prior unique identifiable keys are equivalent;
>   if the values are equivalent, displaying from the local data storage medium a stored frame of the prior request of the three-dimensional virtual view; and
>   if the values are not equivalent, displaying a frame transmitted from the server of the current request by the remote location of a three-dimensional virtual view.

(D.I. 25-2 Ex. 1 at 18).

Claim 22 of the '609 Patent discloses:

> A system for viewing at a client device at a remote location a series of three-dimensional virtual views over the Internet of a volume visualization dataset contained on at least one centralized database comprising:
>   at least one transmitter for accepting the volume visualization dataset from the remote location and transmitting it securely to the centralized database;
>   at least one central data storage medium containing the volume visualization dataset;
>   a plurality of servers in communication with the at least one centralized database and capable of processing the volume visualization dataset to create virtual views based on client request;
>   a resource manager device for load balancing the plurality of servers;
>   a security device controlling the plurality of communications between a client device, and the server; including resource manager and central storage medium;
>   at least one physically secured site for housing the centralized database, plurality of servers, at least a resource manager, and at least a security device;
>   a web application adapted to satisfy a user's request by:
>     a) accepting at the server a user request from the remote location for a plurality of three-dimensional virtual views of at least a portion of the volume visualization dataset, the plurality of views comprising a plurality of separate view frames, the request including a request for a lower image quality parameter for the frames, at a lower frame resolution, and a request for a higher image quality parameter for the frames, at a higher frame resolution,
>     b) at the server, creating the requested frames from the volume visualization dataset at the lower image quality parameter, and

    transmitting the lower image quality parameter frames to the remote location,
  c) displaying at least a portion of the requested lower image quality parameter frames at the remote location,
  d) at the server, creating the requested higher image quality parameter frames from the volume visualization dataset, and transmitting the higher image quality parameter frames to the remote location,
  e) displaying the requested higher image quality parameter frames at the remote location, and
  f) after the lower image quality parameter frames is transmitted to the remote location, transmitting the higher image quality parameter frames from the server to the remote location while the remote location is displaying the lower image quality parameter frames.

(D.I. 25-2 Ex. 1 at 19).

  Neither party has argued that the Amended Complaint provides any additional information relevant to the patent eligibility of the Asserted Claims and neither party asserts that claim construction is needed.

## II.  LEGAL STANDARD

### A. Patent Eligible Subject Matter

  Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

  Section 101 of the Patent Act defines patent-eligible subject matter. It provides, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions

and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014). The purpose of these carve-outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.*

"Patent eligibility under § 101 is a question of law that may contain underlying issues of fact." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1165 (Fed. Cir. 2019). Whether a claim is drawn to patent-eligible subject matter "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*,

8

561 U.S. 593 (2010). Claim construction is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)).

### B. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up).

## III. DISCUSSION

### A. *Alice* Step 1

Under *Alice* Step 1, "we must evaluate the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to" an abstract idea. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017).

The specification explains that the prior art problems the inventions are meant to address are (1) the problem of "low bandwidth and high latency limitations that are inherent properties of the standard Internet," which makes it impracticable or impossible to transmit large VVDs over a standard Internet connection, and (2) "the problem[] of maintaining medical records for long periods of time under security and privacy." (D.I. 25-2 Ex 1 at 2:35-48). The inventions address these problems by (1) providing an access/viewing mechanism that transmits only selective portions of the large VVDs at one time, thereby "optimiz[ing]" bandwidth usage, and (2) separating the point of user access to the VVDs from the location of storage of the VVDs, thereby alleviating the cost of secure storage by centralizing the location of storage for large VVDs across multiple users. (*Id.*).

In other words, the "focus of the claimed advance over the prior art" for all three claims is selectively accessing user-requested data, remotely, that is stored in a centralized storage location. The Federal Circuit has made clear that claims directed to "remotely accessing and retrieving user-specified information" are directed to an abstract idea. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) (cleaned up).

Plaintiff argues the claims are not directed to an abstract idea because they are directed to "improvements to the functionality of a computer or network platform itself." (D.I. 27 at 6 (citing *Mentone Sols. LLC v. Digi Int'l Inc.*, 2021 WL 5291802 at *3 (Fed. Cir. Nov. 15, 2021) (citing *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306-07 (Fed. Cir. 2020)))). I disagree, however, with Plaintiff's characterization of the claims. The claims are not directed to improvements in computer functionality. Instead, they utilize conventional computer components (*e.g.*, data storage media, servers, transmitters, a web application, *etc.*) to accomplish an abstract idea – retrieving user-requested, remotely stored information.

Federal Circuit "precedent is clear that merely adding computer functionality to increase the speed or efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). That is precisely what the Asserted Claims do. The specification claims that the patents allow for remote data to be retrieved more quickly and/or efficiently than in prior art systems. These purported improvements, however, are not attributable to "specific asserted improvements in computer capabilities." *See Mentone Sols.*, 2021 WL 5291802, at *3. Instead, the claim limitations relevant to these supposed improvements are described generically and are themselves either conventional computer functions or abstract ideas implemented using conventional computer functions.

For example, Claims 1 and 19 contain the additional limitation of selectively retrieving only non-locally stored portions of the requested data and Claim 22 contains the additional limitation of retrieving two versions (one placeholder version at a lower image quality parameter and one at a higher image quality parameter) of the requested data. These limitations, which "merely recite generalized steps to be performed on a computer," are abstract and/or conventional processes for selecting which data should be retrieved to satisfy the user's request. *Mentone*, 2021 WL 5291802, at *4. They do not change the fact that the focus of the claims is "remotely accessing and retrieving user-specified information." *Erie*, 850 F.3d at 1330 (cleaned up); *PersonalWeb Tech. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021) (comparing a content-based identifier against other values to determine "whether each received content identifier matches a characteristic of other identifiers" is an abstract idea), *cert. denied*, 142 S.Ct. 1445 (2022).

For these reasons, I find that claims 1, 19, and 22 of the '609 Patent are directed to an abstract idea.

### B. *Alice* Step 2

Because all three claims are directed to an abstract idea, I must determine whether the claims recite an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (cleaned up). An inventive concept requires "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). "Simply appending conventional steps, specified at a high level of generality [is] not enough to supply an inventive concept." *Id.* at 222 (cleaned up).

For this analysis, I will examine each of the three claims individually.

#### 1. Claim 1

Claim 1 discloses a system for remotely accessing virtual views of a VVD by using a web application to (1) determine which of the requested frames of the request are stored locally and which are stored in a centralized database, (2) retrieve the non-locally stored frames, and (3) display the locally stored and retrieved frames together to generate the requested view.

The specification explains, "[the prior art] teaches how volume visualization can be obtained via a client and server interaction over the web without having to retrieve raw scan[s] on to user machines." (D.I. 25-2 Ex. 1 at 2:17-21). This prior art technique, however, required "sufficient bandwidth and low latency network to present information at interactive frame rates." (*Id.* at 2:21-23). Therefore, the "inventive" component of Claim 1 is the ability to obtain virtual views of a VVD over a low bandwidth, high latency network. (*Id.* at 2:36-40 ("an object of the present invention" is to provide "a method and system that overcomes low bandwidth and high latency limitations that are inherent properties of the standard Internet and permits bandwidth usage to be optimized")). The only limitation from Claim 1 related to achieving that stated goal is

the limitation describing the added step of determining whether the constitutive frames of the requested views are stored locally, thereby increasing the efficiency of the system's use of bandwidth by retrieving only non-locally stored frames. (*Id.* at 17:31-49).

This step is claimed functionally, at a high level of generality. Rather than specifically explain how such a determination is made, the claim merely states that the web application achieves this step by "determining if any frame of the requested views of the volume visualization dataset is stored on the local data storage medium." (*Id.* at 17:31-32). Moreover, this limitation effectively amounts to "caching," a conventional computer function. (*Id.* at 13:10-13 ("Where a web application is written in scripting language such as JavaScript, the recollection of rendered frames may be done by utilizing the web browser's caching mechanism"); *see Intellectual Ventures I LLC v. Unified Patents, LLC*, 803 F. App'x 403, 404 (Fed. Cir. 2020) (defining "caching" as, "the process of storing some data files in cache memory, from which data may be retrieved more quickly than from a hard disk," and explaining how the asserted patent offers a specific improvement on that conventionally known technique); *TrackTime, LLC v. Amazon.com, Inc.*, 2019 WL 2524779, at *4 (D. Del. June 19, 2019) (referring to caching as a "generic computer function[]")).

Therefore, the step of determining whether any frame of the requested views is stored locally and requesting only non-locally stored frames, claimed in purely functional terms, is precisely the sort of "conventional[] step, specified at a high level of generality" that is insufficient to transform the nature of the claim into patent-eligible subject matter. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

**2. Claim 19**

Claim 19 discloses the same system as Claim 1 but adds a description of how the web application determines whether requested frames are stored locally. The web application creates a "unique identifiable key" for each request and compares that key with prior requests' keys to determine "if values of the current and prior unique identifiable keys are equivalent." (D.I. 25-2 Ex. 1 at 18:42-60). The web application then only requests and retrieves frames associated with non-equivalent values. (*Id.*).

This "unique identifiable key" system is not sufficient to provide an inventive concept, as it is itself an abstract idea. In *PersonalWeb Tech. LLC v. Google LLC*, the Federal Circuit found patent ineligible claims that compared a "content-based identifier," that is, "a substantially unique name that depends on the item's content" to a "plurality of values" to "grant[] or disallow[] access to the data item based on the comparison." 8 F.4th at 1312-13. The Court expressly held, "the step of comparing the content-based identifier against other values" is abstract, and using content-dependent "cryptographic hashes" in place of conventional names is insufficient to supply an "inventive concept." *Id.* at 1317-18.

Without deciding whether the "unique identifiable key" system here is conventional,[4] I find that it is at least abstract, and therefore insufficient to supply an inventive concept. *Id.* at 1318 (finding plaintiff's content-based identifier system failed *Alice* Step 2 because "even accepting Personal Web's view that these particular uses are not well-known, routine, or conventional, a claim for a *new* abstract idea is still an abstract idea") (cleaned up).

### 3. Claim 22

---

[4] Defendants cite a twenty-five-year-old undergraduate-level computing textbook describing the claimed "searching" process to argue it is. (D.I. 25 at 17-18).

Claim 22 discloses the same system as Claim 1, except the web application does not perform the caching step and instead addresses the problem of low bandwidth/high latency Internet connection by first transmitting lower image quality parameter versions of requested frames, and then transmitting higher image quality parameter versions of the frames. The specification explains, "A lower image quality parameter for the frames may be transmitted over the Internet from the server to the user device at a faster rate than a higher image quality parameter for the frames." (D.I. 25-2 Ex. 1 at 10:43-46).

I do not think this disclosure provides a sufficient inventive concept to transform the abstract idea of remotely accessing user-requested data into a patent-eligible application of that idea. The step of transmitting lower image quality frames first merely employs a commonsense computing principle – small amounts of data can be transmitted over the Internet more quickly than large amounts of data – to carry out the abstract idea of remotely accessing user-requested data. Anyone who has viewed a progressive JPEG image on a website whose resolution gradually increases as it loads is familiar with this conventional idea. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea").

Moreover, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *Id.* at 1290. Here, the ineligible concept and the inventive concept are functionally the same – both involve transmitting data in response to a user's remote request. That the "inventive concept" discloses transmitting two versions of the requested data is not sufficient to render the invention "significantly more" than the ineligible concept. *Intellectual Ventures I LLC v. Erie*

*Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) ("receiving transmitted data over a network and displaying it to a user merely implicates purely conventional activities that are the most basic functions of a computer") (cleaned up).

## IV.   CONCLUSION

For these reasons, I find that the Asserted Claims are ineligible for patenting under 35 U.S.C. § 101. Therefore, Defendants' motion to dismiss is GRANTED.

An appropriate order will issue.